# United States District Court
## Western District of Virginia
### Harrisonburg Division

_____  )
                                     )
                                     )
**WANDA F. BARR**,                   )  Civil No.: 5:10cv00074
                                     )
          *Plaintiff*,          )
**v.**                               )  **REPORT AND**
                                     )  **RECOMENDATION**
**MICHAEL ASTRUE**,                  )
Commissioner of Social Security,     )
                                     )  By:  Hon. James G. Welsh
          *Defendant*           )       U. S. Magistrate Judge
_____  )


This is the second civil action instituted in this court by the plaintiff, Wanda F. Barr, challenging a final administrative of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement to disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

Following adverse agency and administrative laws judge ("ALJ") determinations on her earlier DIB application the plaintiff sought court review of the Commissioner's final determination dated November 24, 2006. (R.11,47-56). This effort was unsuccessful, and summary judgment was ultimately granted in the Commissioner's favor. *Barr v. Astrue*, 2008 U.S.Dist. LEXIS 81634 (WDVa, October 14, 2008).

In her current application the plaintiff again claims to be disabled and this time alleges a November 25, 2008 onset date[1] due essentially to the same combination of impairments. (*See* R13,49,140,145). Her application was for a second time rejected at all levels of the administrative process, including an ALJ denial by written decision dated September 22, 2009 in which it was concluded that the plaintiff retained the functional ability to perform at a sedentary level[2] of exertion her past relevant jobs as a cashier or as a customer service representative. (R.18). The Appeals Council denied a subsequent request for review (R.1-6), and the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The Commissioner has filed a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on December 21, 2010 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and no timely request was made for oral argument.[3]

**I.  Summary Recommendation**

---

[1] This alleged onset date is one day after the date of the adverse ALJ's decision on the plaintiff's initial application. Thus, the relevant time period in the instant case is from November 25, 2008 through December 31, 2009, the date of the plaintiff's insured status expired. (*See* R.11)

[2] "Sedentary work" is defined in 20 C.F.R. § 404.1567(a) to involve lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[3] WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

Based on a thorough review of the administrative record and for the reasons that herein address each of the plaintiff's several allegations of decisional error, it is recommended that the plaintiff's motion for summary judgment be denied and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## II.     Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB.  "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  This standard of review is more deferential than *de novo*.  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (*quoting Craig v. Chater*, 76 F.3d at 589).  Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).  The Commissioner's conclusions of law are, however, not subject to the same

deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

**III.  Evidence Summary**

At the time of her alleged disability onset in the instant case[4] the plaintiff was 39 years of age; at that age she is considered to be a "younger person" for disability purposes, and her age is deemed by the agency not to affect seriously her ability to adjust to other work. (R,22,126,140,178,197).  20 C.F.R. § 404.1563(c).  She has a high school education and one year of college.  Her past relevant work included jobs as cashier and as a customer service representative, and she has engaged in no work activity between her alleged onset date and her last insured date of December 31, 2008. (R.11,18,24,37,146,170).

The plaintiff lives in an apartment with her husband and son, and she states that responsibility for chores is shared between three of them. (R.158-159,190).  Among other chores she is physically able to wash laundry, prepare simple meals, drive to and from the grocery store, shop for groceries, and perform light housecleaning. (R.158, 160-161, 191-192).

Beginning in 2005 and continuing through December 31, 2008 (her date last insured), the plaintiff was treated by John Sherry, M.D., an anesthesiologist at Blue Ridge Pain Treatment Centers.  Although Dr. Sherry's clinical testing demonstrated paraspinal muscle tenderness and rigidity, he found the plaintiff spinal range of motion to be only mildly to moderately restricted,

---

[4] See footnote 1.

and he found her to exhibit intact coordination and sensation, full muscle strength, and full flexion and extension of both lower extremities. (R.218-222,263-292,318-327,353-381). He also noted that the plaintiff's gait was at times abnormally shortened, but it was stable with the use of a cane. (*Id.*). Additionally, Dr, Sherry's office notes document his treatment regime, which included Methadone, Zanaflex, Baclofen, Topomax and trigger point injections, and the fact that this treatment regime "work[ed] well" to manage her pain. (R.218-22,263-292,318-327,353-381).

The plaintiff's medical records also report her non-prescribed use of both her son's Adderall and her husband's Dilaudid. (R.36,266,353-354,380,402). As a result of this drug abuse, the plaintiff's pain management treatment through Dr. Sherry's office was terminated in early 2009 following her second failure to pass a drug screening test. (R.17,402).

In February 2009, approximately seven weeks after expiration of her insured status, the plaintiff sought treatment from Glenn Deputy, M.D, a neurologist at Harrisonburg Medical Associates. His record of this office visit notes that he had not seen her for several years, that her weight to be 249 pounds, and that she was walking with a cane. (R.384). On examination, he found her to exhibit diffuse mild muscle weakness, mildly decreased vibratory sensation, some muscle spasticity, an equivocal Babinski response, and no suggestion of multiple sclerosis. (*Id*.). Based on this clinical assessment, Dr. Deputy "suspect[ed]" the plaintiff had a "type of idiopathic dystonia or spasticity," and he opined that he had "serious doubts about her employability." (*Id.*). His office record, however, contains no supporting residual functional

capacity assessment or identification of any work-related limitations or restrictions other than her use of a cane.

Except for noting her use of a cane for ambulation and her limited range of back motion, the plaintiff's subsequent treatment records from the Harrisonburg Community Health Center similarly identify no work-related limitations or restrictions. (R. 392-405). Moreover, the records show the plaintiff to be "doing well" on her medication regime. (R. 396).

Consistent with this medical record, and after specifically recognizing her obesity, her chronic pain and her use of a cane to be *severe* impairments, state agency medical reviews in December 2007 and in July 2008 separately concluded that the plaintiff retained the functional ability to perform regular work activity at a light to sedentary exertional level, which required only occasional stooping, crouching or climbing. (R.295-296,342-348).

IV. Analysis

**A.**

The plaintiff's primary contention on appeal is that the ALJ allegedly "failed to address" the February 2009 opinion of Dr. Deputy that he had serious doubts about her employability due to diffuse generalized weakness, difficulty walking and poor energy level (*See* R.384). Neither the record nor the ALJ's decision, however, supports this assertion.

The Fourth Circuit has established a five part analysis for evaluating and weighing medical opinions. These include consideration as to "(1) whether the physician has examined the

applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist." *Hines v. Barnhart*, 453 F.3$^d$ 559, 563 (4$^{th}$Cir. 2006); 20 C.F.R. § 404.1527(d). As the ALJ's decision demonstrates, he appropriately made this assessment and determined that Dr. Deputy's opinion should be afforded little weight.

In doing so, he took note of the fact that Dr. Deputy had not seen the plaintiff for several years (R.16), a fact also noted by Dr. Deputy himself. (R.384; *see also* R.256,259). He noted that Dr. Deputy had placed no restrictions or limitations on the plaintiff's activities. (R.16,384.) He took note of Dr. Deputy's equivocal clinical findings. (R.16). *See Mastro v. Apfel*, 270 F.3$^d$ 171, 178 (4th Cir. 2001) (a treating physician's opinion unsupported by clinical findings or inconsistent with other substantial evidence is not entitled to any particular deference). He made reference to the fact that the plaintiff's treatment had been routine and conservative during the decisionally relevant period, and he additionally recognized the fact that Dr. Deputy's opinion was conclusory in nature and spoke to the ultimate issue reserved to the Commissioner. (R.16-17). *See* 20 C.F.R. § 404.1527(e).

Moreover, assuming *arguendo* Dr. Deputy should be considered a treating source, his opinion is decisionally irrelevant. It is not only based on a single office visit after a several year hiatus, but it opines as to her condition after the plaintiff's insured status had expired. As a DIB claimant, the plaintiff is obligated to show that she was disabled on or before December 31, 2008, her last insured date, and if she becomes disabled after that date, '[her] claim must be

7

denied despite [any later established] disability." *Demandre v. Califano*, 591 F.2$^d$ 1088, 1090 (5th Cir. 1979).

**B.**

Implicitly acknowledging her lack of a necessary opinion in the record by a treating or examining physician regarding her residual functional capacity, the plaintiff next argues that it was the ALJ's affirmative responsibility to obtain such an opinion, and she cites as her authority for this contention *De Lopez v. Astrue*, 643F.Supp.2$^d$ 1178, 1184 (CDCal, 2009). Although the ALJ has a general duty regarding the development of the record, the plaintiff's argument significantly overstates this duty.

"The ALJ's duty to develop the record does not mandate that he request additional or supplemental medical source opinions 'as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.'" *Booth v. Astrue*, 2011 U.S.Dist. LEXIS 61584, *34 (SDWVa, June 3, 2011) (quoting *Ingram v. Commissioner, SSA,* 496 F.3$^d$ 1253, 1269 (11th Cir. 2007)).

Addressing the same contention last month in *Cecil v. Astrue,* 2011 U.S.Dist. 73663 (WDVa, July 11, 2011), Judge Moon rejected it for two readily apparent reasons. First, it disregards the plaintiff's "burden to provide evidence proving her disability," and second, "an ALJ is required to seek additional information only when the evidence of record is inadequate" to make a disability determination. (*Id.* at *17). The same reasons are equally compelling in the case now before the court. As the above summary of the medical record more than amply

8

demonstrates, the medical evidence before the ALJ was patently sufficient for him to make his disability determination.

Furthermore, even if it is assumed *arguendo* that the medical record is deemed to be incomplete without such an opinion, the plaintiff has failed either to allege or to demonstrate that inclusion of such documentation would change the outcome of the case. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Taylor v. Astrue*, 2011 U.S.Dist. LEXIS 45523, *30 (EDNC, March 23, 2011) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)).

## C.

As she performed her past relevant jobs, the vocational witness characterized both her work as a cashier and her work as a customer service representative, as "light to medium" in exertional level. (R.38.) Given this testimony and the ALJ's finding that she no longer has the ability to perform work beyond the light to sedentary" level of exertion (R.15; *see also* 38-39), the plaintiff argues, she is unable to perform either of these prior jobs and that the ALJ in failing in failing to find her to be disabled. This argument, however, ignores completely the vocational testimony regarding the *light to sedentary* exertional demands of these jobs as generally performed in the national economy (R.36-41).

"The purpose of bringing in a [vocational witness] is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Based on his residual functional

9

capacity assessment and his appropriate reliance on vocational testimony regarding the exertional demands of plaintiff's past work as generally performed, the ALJ's finding that the plaintiff could meet the demands of her past work as generally performed is supported by substantial evidence. 20 C.F.R. § 404.1560(b)(2)-(3).

At step four of his sequential evaluation, the ALJ has the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3$^d$ 287, 290 (4th Cir. 2002). To meet this requirement, the ALJ may take administrative notice of information available in publications such as the DOT or, as he did in the instant case, obtain the occupational testimony of a vocational witness. 20 C.F.R. § 404.1566(d)-(e); *see also Walker v. Bowen*, 889 F.2$^d$ 47, 50 (4th Cir. 1989). Contrary to the plaintiff's contention, in making this decision, it is the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as performed in a specific setting that is controlling. *See* 20 C.F.R. §§ 404.1560(b)(2) and 404.1566(b); *see also Pass v. Chater*, 65 F.3$^d$ 1200, 1207 (4th Cir. 1995).

## D.

On appeal the plaintiff also challenges the ALJ's assessment of her credibility. Specifically, she argues that the ALJ erroneously discounted her testimony regarding her subjective complaints of intense pain and severe limitations. Her challenge to this finding by the ALJ, however, fails to acknowledge the ALJ's finding that this testimony was not consistent with the scope of her daily activities, with the absence of any physician-placed activity restrictions,

with the physician-recorded effectiveness of her medication regime, with her history of conservative treatment, and with her history of medication non-compliance. (*See* R.17.)

As the Commissioner correctly argues, these reasons are all factually supported in the record, and as he also points-out it is the ALJ's responsibility to make credibility determinations. *See Craig v. Chater,* 76 F.3$^d$ 585, 589 (4th Cir. 1996) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the . . . the ALJ.") (quoting *Walker v. Bowen*, 834 F.2$^d$ 635, 640 (7th Cir. 1987). Here, substantial evidence plainly supports the ALJ's multiple stated bases for his credibility finding.   (R.17,36,158,160-161,191-192,218-233,243-252,254,256-259,261,263-292,318-327, 351-381).

Moreover, in accordance with his decisional obligation to assess the credibility of the plaintiff's complaints pursuant to the agency's two-step analysis, the ALJ first determined that the plaintiff's underlying medical conditions could produce the subjective symptoms about which she testified, and pursuant to the second prong of this analysis he took into account all of the available evidence in making his evaluation of her statements about the intensity and persistence of these subjective symptoms and their impact on her ability to work. (R.16-18.) *Craig v. Chater*, 76 F.3$^d$  595-596; SSR 96-7p.

**E.**

Additionally, the plaintiff argues that in determining whether she was disabled, the ALJ failed to consider properly the impact of her obesity on her functional abilities, particularly given her body mass index ("BMI") of 46.3.[5] On review, this contention is also patently without merit.

Social Security Ruling ("SSR") 02-1p identifies four ways obesity may be considered in the sequential evaluation process of determining disability. It will be considered in determining whether the individual has a medically determinable impairment, whether the individual's impairment is severe, whether the individual's impairment meets or equals the requirements of a listing, and whether the individual's impairment(s) prevents her from doing her past relevant work or other work existing in significant numbers in the national economy.

In compliance with this agency directive, the ALJ in the instant case took explicit note of her height (62") and weight (253 lbs.). (R.15). He identified obesity as one of the plaintiff's *severe* impairments. (R.13). He included it as part of his consideration of her impairments under listing 1.00 (musculoskeletal system), listing 10.00 (impairments that affect multiple body systems) and listing 11.00 (neurological). (R.14-15). He discussed the plaintiff's testimony concerning the functional impact of her obesity-related leg spasms and low back pain in making his residual functional capacity assessment. (R.15-16). And he decisionally relied on the functional assessments made by Dr. Sherry and the two state agency reviewers that included consideration of the plaintiff's obesity. (R.16-17).

---

[5] BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters. (kg/m2). *Stamps v. Astrue*, 2010 U.S. Dist. LEXIS 131524, *40 (NDIll, Dec. 10, 2010). A person with a BMI of 40 or more is deemed to be extremely obese. "Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity," SSR 02-1p; *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir 2011).

Implicit in this contention by the plaintiff is a suggestion that the ALJ was obligated to give significant decisional significance to the extreme nature of her obesity as evidenced by a BMI of 46.3. An individual's BMI, however, is not necessarily evidence of the degree to which an individual's obesity is an impediment to work activity. "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment," and "[n]either do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes." SSR 02-1p.

As outlined herein, the ALJ neither ignored the plaintiff's obesity nor failed adequately to consider its functional effects. Moreover, in her brief the plaintiff points to nothing in the medical record to suggest that her weight adversely affected her functional ability beyond that contained in the ALJ's residual functional capacity determination. *See* 20 C.F.R. § 404.1512(a).

**F.**

In passing it also merits mention that the plaintiff does not argue on appeal that her medical condition or functional abilities have materially changed since her earlier DIB application was denied by administrative decision dated November 24, 2006. Any analysis of the plaintiff's current claim must, therefore, begin with recognition of the fact that the prior adverse determination was dated only one day before the onset date alleged in her current application. (R.11). *See Albright v. Commissioner*, 174 F.3rd 473, 477 (4th Cir. 1999). And that prior decision alone is "highly probative" of the plaintiff's continuing capacity to perform her past relevant work one date after the prior decision); *Id.; see also* Acquiescence Ruling ("AR") 00-1(4).

**V.     Proposed Findings**

1. The ALJ's credibility determinations are based on substantial evidence;

2. The ALJ properly and adequately evaluated the plaintiff's obesity and its impact on her residual functional abilities;

3. The ALJ's residual functional capacity assessment is based on substantial evidence;

4. The ALJ had no duty to obtain a residual functional capacity opinion from a treating or examining source;

5. The ALJ's finding that the plaintiff retained the ability to perform work as a cashier and as a customer service representative is supported by substantial evidence and is consistent with his residual functional capacity assessment;

6. Through the date last insured, the plaintiff was not disabled within the meaning of the Act; and

8. All facets of the Commissioner's final decision in this case are supported by substantial evidence, and it should be affirmed.

**VI.    Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VII.    Notice to the Parties**

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED:  4th day of August 2011.

          /s/    *James G. Welsh*
      United States Magistrate Judge